THOMAS R. AND BENNIE MILLS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mills v. Commissioner
Docket No. 21008-84.
United States Tax Court
T.C. Memo 1988-134; 1988 Tax Ct. Memo LEXIS 162; 55 T.C.M. (CCH) 506; T.C.M. (RIA) 88134; March 28, 1988; As amended April 4, 1988 Harold D. Rogers, for the petitioners. Richard D. Ames, for the respondent. WILLIAMS
MEMORANDUM OPINION WILLIAMS, Judge: This case is before the Court on petitioners' motion for award of litigation costs pursuant to section 7430. [1] We must decide whether petitioners are the "prevailing party" in this litigation within the meaning of section 7430(c)(2). [2]
*163 The Commissioner determined deficiencies in petitioners' Federal income tax and additions to tax solely for petitioner Thomas R. Mills pursuant to section 6653(b) as follows: Additions to Tax
Year
Deficiency
Section 6653(b)
1979
$ 212,204,04
$ 106,102,02
1980
60,621.60
30,310.80
1981
209,364.39
104,682.20
Some of the facts have been stipulated and are so found. In addition to the parties' stipulation, respondent submitted the affidavit of respondent's revenue agent, Larry Turnbow. Petitioners did not controvert any facts asserted in this affidavit, and consequently we take as true the allegations of fact made by Mr. Turnbow. Because no material facts are in dispute between the parties, a hearing is not necessary. At the time of filing their petition, petitioners lived in Wichita Falls, Texas. In 1979, 1980, and 1981 petitioners owned and operated a used car sales lot in Wichita Falls doing business as Mills Motor Company. In his notice of deficiency respondent adjusted certain items on petitioners' Federal income tax returns for the years in issue as follows: (a) increased gross receipts in the aggregate amount of $ 374,028.00 for *164 all years; (b) decreased cost of goods sold in the aggregate amount of $ 385,364.00 for all years; (c) disallowed certain Schedule C business expenses in the aggregate amount of $ 16,088.00 for all years; (d) disallowed a casualty loss in the amount of $ 36,046.00 claimed in 1980; and (e) asserted an addition to tax for fraud in each year in the aggregate amount of $ 241,095.00 for all years.
The most significant issues in this case were respondents' adjustment to gross receipts, adjustments to the cost of goods sold of Mills Motor Co., and imposition of the addition to tax for fraud. In the notice of deficiency respondent used the bank deposits method of proof to determine petitioners' gross receipts. He found that deposits to petitioners' bank accounts exceeded funds available for deposit from reported sources. Respondent determined petitioners' cost of goods sold by analyzing the sales invoices, sales journals, cash disbursements journals, and inventory records. In these records petitioners made large adjusting entries which substantially increased cost of goods sold. During the audit petitioners did not offer to respondent's agent any reasonable explanation for *165 the adjusting entries nor could the entries be substantiated. In his adjustments to the cost of goods sold, respondent disallowed the portion attributable to the adjusting entries on the books. The adjustments to petitioners' gross receipts and cost of goods sold were as follows: 1979
1980
1981
Gross Receipts
$ 204,513
$  15,157
$ 154,358
Cost of Goods Sold
125,555
93,117
166,692
Total Adjustments
$ 330,068
$ 108,274
$ 321,050
to Gross Profit
During the initial audit of petitioners' tax return the revenue agent requested petitioners to furnish their books, records, and bank records for the years in issue. Petitioners furnished their ledgers for 1979, 1980, and 1981, and their sales invoices and journals for 1980 and 1981, but informed the agent that their 1979 journal was lost and could not be located. Petitioners produced for the revenue agent the bank records pertaining to their checking accounts but did not furnish records pertaining to bank drafts. Respondent summonsed the bank records, but the bank could not gather the records before the running of the statute of limitations. Because petitioners refused to extend the statute *166 of limitations, respondent issued the notice of deficiency based on the information in respondent's possession. Respondent determined that petitioner Thomas R. Mills had underreported petitioners' income for all the years in issue with a fraudulent intent to evade tax based on the following: 1. During the years in issue petitioners received checks from third parties which were directly applied to the payment of loans and not deposited to petitioners' bank accounts. 2. Petitioners received a check for $ 44, 549.52 in 1981 which was not reported on their return, or in their books and records. 3. Petitioners received income from City Auto Parts in 1981 which was not reported on their returns. 4. Petitioners received cash in each of the years in issue which was not deposited to their bank accounts. 5. Petitioners' correct gross receipts were substantially greater than the gross receipts reported on their returns. 6. Petitioners failed to maintain, or to submit to the agents of the respondent, complete and accurate records of their income producing activities. 7. Petitioner, Thomas R. Mills, made false statements to the agents of the respondent. 8. Substantial *167 understatements of taxable income and tax. Petitioners attended settlement conferences with respondent on March 19, 1985, January 10, 1987, April 2, 1987 and on June 24, 1987. In those conferences respondent repeatedly asked the petitioners' representatives to state their position as to the correct amount of the taxable deposits and cost of goods sold, and to furnish the documentation supporting their positions. In the April 2, 1987, settlement meeting, petitioners for the first time presented a list of deposits they contended were non-income deposits for which petitioners had not been given credit. Soon after this meeting, an agreement as to the proper amount of gross receipts was reached by the parties. In the settlement meeting on June 24, 1987, petitioners presented bank records which they contended established the proper amount of cost of goods sold. Within three hours the parties settled the case. For settlement purposes the parties agreed to the following computation of gross receipts, cost of goods sold and gross profit: Gross Receipts
1979
1980
1981
Gross receipts per
answer
$ 1,699,172 $ 1,404,732
$ 2,182,282 Less: Nontaxable
deposits
13,228 5,125
40,973 Math error
9,475 Floor plan deposits
18,475
Motor home sale
11,500 Corrected gross
receipts
$ 1,685,944 $ 1,381,132
$ 2,120,334 Cost of Goods Sold
Check purchases
$   722,972 $   607,744
$   953,600 Reconditioning Costs
68,358 53,152
53,578 Bank Drafts
782,700 573,780
870,273 End/Beginning Inv.
(84,130)
32,251
(12,496)
Corrected cost of
goods sold
$ 1,489,930 $ 1,267,027
$ 1,864,955 Corrected gross
profit
$   196,044 $   114,105
$   255,379 *168 Respondent contends that trade-ins should be added to gross receipts and cost of goods sold. Petitioners concede the Schedule C adjustments as determined in the notice of deficiency, and the parties agree that petitioners are entitled to deduct a casualty loss in 1980 in the amount of $ 12,000. Petitioners concede the addition to tax for fraud for 1979, and respondent concedes that no additions to tax for fraud are due for 1980 or 1981. Petitioners agree to an addition to tax for negligence for 1981. The aggregate deficiencies and additions to tax as determined in the notice of deficiency are $ 723,285 and in the stipulated settlement are $ 44,814. On September 18, 1987 petitioners' filed a motion for award of litigation costs. In the notice of objection to petitioners' motion respondent concedes that petitioners have exhausted the administrative remedies available to them and that petitioners claim a reasonable amount of litigation costs. Section 7430 provides that a "prevailing party" in any civil proceeding brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under the Internal Revenue Code *169 may be awarded a judgment for reasonable litigation costs incurred in that proceeding. Because of respondent's concessions the only issue before us is whether petitioners are prevailing parties within the meaning of section 7430. To satisfy the statutory definition of prevailing party, petitioners must establish that (1) the position of the United States in the civil proceeding was unreasonable and (2) they substantially prevailed with respect to the amount in controversy or with respect to the most significant issue or set of issues presented. The evidence clearly supports petitioners' position that they substantially prevailed with respect to the amount in controversy. The question of whether the position of the United States was unreasonable remains for our determination. Because this case is appealable to the Fifth Circuit in finding whether respondent acted reasonably in this case, we must examine respondent's position at the time petitioners filed the petition. ; , affd. . Petitioners argue that *170 respondent's litigating position was unreasonable because he failed to examine bank records, floor-plan loans or other loans to purchase cars when investigating petitioners' cost of goods sold. Furthermore, petitioners assert that respondent had no reasonable basis to prove fraud by clear and convincing evidence since he only investigated petitioners' bank deposit records. In their reply brief petitioners do not contest respondent's assertion that petitioners failed to furnish respondent complete and accurate tax records. Furthermore they do not contest any of the facts asserted by revenue agent Larry Turnbow in his affidavit. Significantly they do not controvert Mr. Turnbow's assertion by affidavit that the records providing the necessary information for resolution of this case were furnished at the parties' last settlement conference five days prior to trial. Instead petitioners simply assert that respondent's litigating position was unreasonable. Petitioners' glittering generalizations do not satisfy their burden of proof. In the absence of adequate books and records, respondent is authorized to determine the existence and amount of petitioners' income by any method that *171 clearly reflects income. Section 446(b); . The bank deposits method is an accepted method of reconstructing income. ; , affd. . In light of the facts in respondent's possession at the time of the filing of the petition and petitioners' failure in providing necessary books and records, respondent's determination of petitioners' gross receipts and cost of goods sold were justified, and his position in this litigation was not unreasonable. Petitioners did not furnish complete records supporting the amounts claimed on their return as gross receipts and cost of goods sold. Respondent repeatedly asked petitioners' representatives to disclose their position as to the correct amount of the taxable deposits and as to the cost of goods sold and to furnish documentation supporting their positions. After missing several opportunities to support their contentions petitioners finally produced further records which established the correct gross receipts *172 and cost of goods sold. Shortly after the production of such evidence the parties settled the case. Petitioners rely on , in which we awarded litigation costs because respondent did not conduct an adequate investigation before asserting fraud. See also . In Don Casey respondent had no reason to believe that the taxpayer was committing fraud and no reason to doubt the trustworthiness of some of the taxpayer's documents. In the case before us the inadequacy of petitioners' books and records coupled with petitioners' lack of explanation regarding adjustments made to those books and records gave respondent ample grounds to determine fraud in the statutory notice. Moreover petitioners conceded fraud for 1979. We will not allow petitioners to benefit from their silence and delay in cooperating with respondent. We therefore find the position of the United States in this proceeding to be reasonable. Decision will be entered without an award of litigation costs.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect for the years in issue, unless otherwise indicated. ↩
2. This case presents the application of § 7430 prior to its amendment by the Internal Revenue Code of 1986. ↩